| | |
|---|---|
| SCOTT L. PUMPHREY and KAREN E. PUMPHREY,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC COAST MARINE GROUP, INC., d/b/a TOWBOATUS BEAUFORT,<br><br>Defendant. | Case No. _____ |

## COMPLAINT

**NOW COME** the Plaintiffs, Scott L. Pumphrey and Karen E. Pumphrey, by and through undersigned counsel, and say unto the Court:

### PARTIES AND JURISDICTION

1. This is a case of admiralty and maritime jurisdiction and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333. In the alternative, the Court has jurisdiction to resolve any dispute among the parties pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and/or 28 U.S.C. § 1367 based on supplemental jurisdiction over any other pendent claim so related to any claim over which the Court has jurisdiction.

2. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 (Federal Declaratory Judgment Act) for the purpose of determining a question of actual controversy between the parties as hereinafter more fully appears.

3. Plaintiffs Scott L. Pumphrey and Karen E. Pumphrey are citizens and residents of the state of Maryland.

4. Now and at the time of the Incident and Operation (as those terms are defined below), the Plaintiffs own(ed) the M/V STRATGOI a/k/a and f/k/a M/V VIVENS AQUA, a 55'+/- 2000 Novatech bearing HIN #NMCG5507E001, Official #1100988, built in Taoyuan, Taiwan, her engines, tackle, apparel, equipment, etc. (the "Vessel"); the Vessel is currently located within the District.

5. Defendant Atlantic Coast Marine Group, Inc. ("ACMG") is a North Carolina corporation with its principal office and place of business at 201 Arendell Street, Morehead City, Carteret County, North Carolina 28557.

6. Upon information and belief, ACMG does business as TowBoat US Beaufort, and is in the business of providing marine towing and salvage services in and about the waters of this District.

## FACTUAL BACKGROUND

7. During the early morning hours in or about January 24 or 25, 2022, while in transit from Florida to Maryland via the navigable waters in the Atlantic Ocean, the Vessel suffered a loss of steering and grounded upon or near the south end of Ocracoke Island, Hyde County, North Carolina ("Incident").

8. Thereafter, without a written agreement in place and no oral agreement as to specific price terms, Defendant attempted to unground, tow, free, remove and/or salvage the Vessel which allegedly and by their account, took place over the period of January 25, 2022 – February 2, 2022 ("Effort"). During the period of January 28–31, 2022, Defendant also removed the Vessel's fuel ("Lightering"). The Effort and Lightering are, together, the "Operation".

9. During the Operation, Defendant damaged the Vessel including damage to an anchor, a trim tab, and forcing a port bow cleat to break off of the Vessel.

10. The Operation did not result in the ungrounding or freeing of the Vessel.

11. On February 1, 2022, Plaintiffs terminated ACMG's involvement due to continued failure to unground or free the Vessel and lack of innovation; specifically, ACMG's apparent strategy was to continue to pull and jerk upon the Vessel with inadequate equipment for the instant operation, thereby further risking damage and her integrity and making little, if any, appreciable progress towards ungrounding or freeing the Vessel.

12. On February 2, 2022, Plaintiffs hired Crum Works, of Buxton, North Carolina, which, for the agreed sum of $90,000.00, successfully deployed pneumatic pins and managed to unground the Vessel and moved the Vessel over land to a deeper water entry point. Crum Works started work on February 5, 2022, and the Vessel was back afloat in the water on or about February 9, 2022.

13. On February 2, 2022, ACMG made a claim for time and materials for the Operation seeking $109,294.32 comprised of (a) Invoice 2022-T22 (and Daily Log Sheets) for $42,008.00 ostensibly for Lightering services and (b) Invoice 2022-T23 (and Daily Log Sheets) for $67,286.32 ostensibly for the Effort (attached hereto as Exhibit "A"; collectively the "Claim").

14. The post-casualty value of the Vessel remains unknown as assessments and repairs remain ongoing; however, if she is not a constructive total loss, her post-casualty, pre-repair value is expected to be significantly less than prior to the incident.

## NATURE OF CONTROVERSIES

15. ACMG has presented a time and materials Claim for the Operation seeking payment in the amount of $109,294.32. Plaintiffs disagree and contend that a nominal sum is appropriate for reasons shown herein and as may be shown at the trial of this matter.

16. There is no written agreement for ACMG's services for the Operation. Therefore, some or all of the services performed during the Operation amount to either (A) marine salvage (contractual, which is denied, or pure) with little or no "success" (an element of marine salvage) and warranting a low order award or no award, and/or (B) marine services pursuant to an express agreement (which is denied), or an implied agreement warranting a *quantum meruit* award, being the fair and reasonable (here, nominal or appropriate) value for the services. Regardless of the category or nature of relief to which Defendant may be entitled, Plaintiffs contend that the Claim for the Operation is grossly excessive and damages caused to the Vessel by ACMG during the Operation should be reduced from any sum owed to Defendant.

17. There exists an actual controversy between the parties within the jurisdiction of this Court involving the rights and liabilities of the parties for their respective roles in the Operation which controversy may be determined by a judgment of this Court.

**WHEREFORE**, Plaintiffs request an Order of this Court as follows:

1. That the Court determines and adjudicates the rights and liabilities of the parties arising out of the Operation, including but not limited to declaring:

    a. The nature of the Operation, particularly whether Defendant's services amount to marine salvage (contractual or pure) or marine services (actual or implied agreement);

    b. If some or all services of the Operation amount to marine salvage, then declare a post-casualty value of the Vessel and declare a low order award or in the alternative that no award is appropriate due to lack of "success";

    c. If some or all of the services of the Operation amount to marine services, then declare there was an express contract (and rate, if any, which are denied) or declare a nominal or appropriate award for an implied contract on a *quantum meruit* basis; and/or

    d. Discharge of any alleged lien against the Vessel.

2. For a trial by judge pursuant to Rule 9(h) and Rule 38(e);

3. For the costs of this action to be taxed against Defendant;

4. For reasonable attorneys' fees if/to the extent allowed by law; and

5. For such further and other relief as the Court may allow.

Respectfully submitted this the 7th day of March, 2022.

CRANFILL SUMNER LLP

By: /s/ Jason R. Harris
Jason R. Harris
NC Bar No. 27876
Melanie A. Huffines
NC Bar No. 55154
101 N. 3rd Street, Suite 400
Wilmington, NC 28401
(910) 777-6000
Fax (910) 777-6111
jharris@cshlaw.com
mhuffines@cshlaw.com
*Attorneys for Plaintiffs*